# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **J & M TANK LINES INC; and TRANSCHEM USA, L.L.C.,** | ) ) ) |
| **Plaintiffs,** | ) ) ) |
| vs. | ) ) ) |
| **ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY; PROTECTIVE INSURANCE COMPANY; and TRUENORTH COMPANIES, L.C.,** | ) ) Case No. 2:24-cv-00579-MHH ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs J&M Tank Lines, Inc. and TransChem USA, L.L.C. have sued two insurance companies and their insurance broker. (Doc. 40).[1] One of the defendants, Protective Insurance Co., has filed a motion to dismiss. (Doc. 22). J&M and TransChem have asked the Court to realign Protective as a plaintiff and to enter partial judgment for the plaintiffs on the pleadings. (Doc. 27; Doc. 46).[2] Both

---

[1] In their initial complaint, the plaintiffs asserted claims against Sompo International, Protective Insurance Co., and TrueNorth Companies, L.C. (Doc. 1). In their second amended complaint, the plaintiffs substituted Endurance American Specialty Insurance Co. for Sompo. (Doc. 40).

[2] Protective filed its motion to dismiss and the plaintiffs filed their motion to realign while the first amended complaint governed this action. Endurance and TrueNorth consented to the plaintiffs' motion for leave to file a second amended complaint. (Doc. 38, p. 1, ¶ 1). In the motion for permission to amend, Endurance and TransChem stated that the second amended complaint does

1

motions concern the fact that Protective, the plaintiffs' first-layer liability insurer, has paid the plaintiffs, and Protective's payment obligation is exhausted. The remaining defendants are the plaintiffs' second-layer excess carrier and insurance broker. This opinion addresses the parties' motions, beginning with the motion for judgment on the pleadings.[3]

## I.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "'Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'" *Johnson v. City of Atlanta*, 107 F.4th 1292, 1297 (11th Cir. 2024) (quoting *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 940 (11th Cir. 2023)). The documents that a district court may consider on a motion for judgment on the pleadings include the operative complaint, the defendants' answers, and attachments to the complaint or the answers if an attachment is central to a claim or a defense, and the attachment's authenticity is not disputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002); *Johnson*, 107 F.4th at 1300. District courts analyze Rule 12(c) motions for judgment on the

---

"not alter the status of" Protective's motion to dismiss or the plaintiffs' motion to realign, that the motions did not need "to be refiled or re-briefed," and that the Court could treat the motions "as applicable to the Second Amended Complaint." (Doc. 38, p. 2, ¶ 2).

[3] J&M, TransChem, and TrueNorth also have filed a motion to stay deadlines in this matter pending resolution of Protective's and the plaintiffs' motions. (Doc. 66).

pleadings as they analyze Rule 12(b)(6) motions to dismiss. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) (noting that district courts consider the "same" question under Rule 12(c) and Rule 12(b)(6): "whether the count stated a claim for relief").[4] "In determining whether a party is entitled to judgment on the pleadings," district courts must "accept as true all material facts alleged in the non-moving party's pleading" and must "view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

## II.

Because Endurance is the non-moving party, the Court looks to Endurance's answer to the second amended complaint to construe the plaintiffs' allegations in the light most favorable to Endurance. The plaintiffs filed their second amended complaint on August 15, 2024. (Doc. 40). Endurance answered the second amended complaint on August 29, 2024. (Doc. 44). On September 12, 2024, the plaintiffs filed their motion for partial judgment on the pleadings. (Doc. 46). Endurance

---

[4] A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

3

amended its answer on September 27, 2024 and filed a response to the plaintiffs' motion on October 8, 2024.  (Doc. 48; Doc. 49).

A defendant has "21 days after being served with the summons and complaint" to respond to a plaintiff's complaint.  FED. R. CIV. P. 12(a)(1)(A)(i).  A defendant may amend its answer "as a matter of course" within 21 days of serving the answer.  FED. R. CIV. P. 15(a)(1)(A).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  FED. R. CIV. P. 15(a)(2).[5]  Endurance's window to amend its answer as a matter of course expired on September 19, 2024.  Because Endurance filed its amended answer on September 27, 2024 without consent or leave, the Court will strike Endurance's amended answer from the record.[6]

Viewing Endurance's answer to the plaintiffs' complaint in the light most favorable to Endurance, Protective provided liability insurance to J&M as a named

---

[5] District courts "should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).

[6] A party also may amend its pleading "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  FED. R. CIV. P. 15(a)(1)B).  Although an answer is a pleading under Rule 7(a), an answer does not qualify as a pleading for purposes of Rule 15(a)(1)(B) because the Federal Rules of Civil Procedure do not require a pleading responding to an answer.  See FED. R. CIV. P. 7(a)(7) (noting party may reply to answer only if district court orders reply).  Rule 15(a)(1)(B) does not contemplate amendment after the service of a motion for judgment on the pleadings pursuant to Rule 12(c).  Therefore, Rule 15(a)(1)(B) does not apply in this instance.

4

insured and to TransChem as a related insured. (Doc. 40-1, pp. 3, 19).[7] Under the policy, Protective:

> [A]gree[d] to indemnify the named or related insured for ultimate net loss, less the self retention, and subject to the limit of indemnity, which the named or related insured has or may by law become liable to pay and has paid to any person or persons as damages . . . as the result of an occurrence arising out of trucking operations or brokerage operations.

(Doc. 40-1, p. 5). The policy contains a $1,000,000 indemnity limit per occurrence, less a $100,000 self-retention. (Doc. 40-1, pp. 3–4). Under the Endurance policy, Endurance agrees to "pay on behalf of the insured the amount of 'loss' covered by this insurance in excess of the 'underlying limits of insurance' subject to the LIMITS OF INSURANCE Section." (Doc. 40-2, p. 28) (emphasis omitted).[8] The Endurance policy "follow[s] form to the terms, conditions, definitions, and exclusions" of the Protective policy except where the terms of the Protective and Endurance policies differ. (Doc. 40-2, p. 28). The Endurance policy provides a $1,000,000 limit per occurrence. (Doc. 40-2, p. 3).

---

[7] The plaintiffs attached a copy of Protective's insurance policy to their complaint as Doc. 40-1. The policy is central to the plaintiffs' claims. *Horsley*, 304 F.3d at 1134–35. In responding to the plaintiffs' allegations concerning the language of the Protective policy, Endurance stated repeatedly that it neither admits nor denies the plaintiffs' averments as to the policy's language and that the policy "itself is the best evidence of its contents." (Doc. 44, p. 4, ¶¶ 19–24; *see also* Doc. 44, p. 3, ¶ 18). Thus, Endurance has not disputed the policy's authenticity. *Horsley*, 304 F.3d at 1134–35. The Court will consider the language of Protective's policy in resolving the plaintiffs' motion. For the same reasons, the Court will consider the language of Endurance's policy, attached to the second amended complaint as Doc. 40-2.

[8] The Endurance policy identifies the Protective policy as an underlying policy. (Doc. 40-2, p. 6).

On August 15, 2022, Endurance received notice of an "incident" for which the plaintiffs sought coverage under the insurance policies. (Doc. 44, pp. 5–6, 7, ¶¶ 35–36, 45). In August of 2023, J&M and Protective executed a "Loss Payment Agreement." (Doc. 50-1).[9] The LPA states that an "incident" occurred "in which a TransChem USA, LLC (a Related Insured) tanker trailer, containing the chemical motor-oil additive Lubrizol 1389, experienced a pressure-released emission in Gloucester County, New Jersey." (Doc. 50-1, p. 2). J&M and Protective agreed that "J&M ha[d] paid loss for the Incident in excess of the Self Retention and combined single limit per occurrence" in the Protective policy. (Doc. 50-1, p. 2). Protective agreed to "issue payment by check(s) or wire totaling $900,000.00" to TransChem. (Doc. 50-1, p. 2). J&M and Protective agreed that the "Indemnity Contract Self Retention and per occurrence Limit of Indemnity are fully exhausted with respect to the Incident." (Doc. 50-1, p. 2). Endurance sent the plaintiffs four reservation of rights letters. (Doc. 44, pp. 7, 10, 11, ¶ 47, 69, 73, 80). To date, Endurance has not tendered payment to the plaintiffs.

---

[9] The allegations in paragraphs 58 through 61 of the plaintiffs' second amended complaint concern the LPA and its contents. Endurance admits that it received a copy of the LPA. (Doc. 44, p. 9, ¶ 61). Endurance asserts that it does not have sufficient information to admit or deny the plaintiffs' allegations concerning covered "costs," so Endurance denied these allegations. (Doc. 40, p. 18, ¶ 60; Doc. 44, p. 9, ¶ 60). Endurance also indicated that the LPA "itself is the best evidence of its contents." (Doc. 44, p. 9, ¶ 58; *see also* Doc. 44, p. 9, ¶¶ 59–61). Accordingly, the LPA is central to the plaintiffs' claims, and Endurance has not disputed its authenticity. *Horsley*, 304 F.3d at 1134–35. The Court will consider the language of the LPA in resolving the plaintiffs' motion.

In their second amended complaint, the plaintiffs seek, among other things, a declaratory judgment against Endurance and Protective. (Doc. 40, pp. 25–26, ¶¶ 86–92). The plaintiffs seek a declaration "that the indemnity limits of the Protective Policy are exhausted by virtue of Protective's $900,000 payment of the Protective Policy limits as memorialized by the LPA." (Doc. 40, p. 26).

## III.

The plaintiffs request judgment on the pleadings against Endurance on their request for a declaration that Protective has exhausted its indemnity limits. (Doc. 46, p. 1). The plaintiffs contend that Endurance cannot contest Protective's payment. (Doc. 46, pp. 14–17). Though the Eleventh Circuit has not addressed the issue, the weight of authority provides that an excess insurer is "free to contest claims submitted to it during the claims adjustment process, even when an underlying insurer has already determined that the same claim falls within the scope of coverage," but "absent a specific contractual provision," an excess insurer may not "second-guess other insurers' payments of earlier claims without first showing that those payments were motivated by fraud or bad faith. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 846 (9th Cir. 2020); *see also AXIS*, 975 F.3d at 846 n.6 (collecting cases on point).[10] Here, Endurance's policy does not

---

[10] One district court has applied this principle against one of Endurance's sister companies. *See Duke Univ. v. Endurance Risk Sols. Assurance Co.*, No. 5:20-CV-672-BO, 2022 WL 3636601, at

7

contain a provision allowing Endurance to contest Protective's payment, and Endurance does not contend that Protective made a fraudulent payment or paid the plaintiffs' claim under the Protective policy in bad faith.

Endurance argues that the Ninth Circuit's *AXIS* decision supports its ability to challenge Protective's payment. (Doc. 49, pp. 12–14). According to Endurance:

> [T]he *AXIS* opinion clearly and explicitly states that its outcome would be different, ruling in favor of the excess carrier, in a case involving "a single claim . . . referred to two different insurers, who took differing views of whether the claim fell within the underlying policy's coverage provisions." *AXIS*, 975 F.3d at 845. That is exactly the scenario here. The *AXIS* court favorably cites to the Ninth Circuit's opinion in *Shy v. Ins. Co. of the State of Pennsylvania*, 528 F. App'x 752 (9th Cir. 2013), which held in favor of the excess carrier in such a case.
>
> Applied to the instant case, the *AXIS* and *Shy* opinions stand for the proposition that Endurance [sic] excess policy follows the terms of the underlying Protective Policy, but *not* by Protective's position that its coverage was properly exhausted. [Citation omitted.]

(Doc. 49, p. 13) (italics in brief). This argument misapprehends *Shy* and *AXIS*. The language from *Shy* that Endurance cites stands for the proposition that an excess insurer "is not bound by [the underlying insurer]'s determination that there was coverage" simply because the excess insurer's policy "is a following-form policy, which means that it incorporates the terms of the underlying policy." *Shy v. Ins. Co. of the State of Penn.*, 528 Fed. Appx. 752, 754 (9th Cir. 2013) (citation omitted). In

---

*5–*6 (E.D.N.C. Aug. 22, 2022).

8

*Shy*, the Ninth Circuit stated: "We conclude that [the excess insurer] is bound by the terms of the [underlying insurer]'s policy but not [the underlying insurer]'s coverage decision." *Shy*, 528 Fed. Appx. at 754.

In *AXIS*, the Ninth Circuit reiterated the holding in *Shy* but limited the circumstances under which an excess insurer can successfully disavow a primary carrier's payment decision. *See AXIS*, 975 F.3d at 846. As noted, Endurance has not satisfied either of the circumstances under which it may distance itself from Protective's decision regarding payment under the Protective policy, but Endurance still may rely on provisions in the policy it issued to J&M to limit or refuse excess coverage to the plaintiffs because Protective's coverage decision does not require Endurance to provide coverage. *See* 975 F.3d at 846. On the record in this case, Endurance simply may not challenge Protective's payment decision.[11]

## IV.

A party may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1). District courts also "are duty bound to consider their subject matter jurisdiction *sua sponte*." *Burr & Forman v. Blair*, 470 F.3d 1019, 1035 n.38

---

[11] Endurance also cites to *Intel Corp. v. American Guarantee & Liability Insurance Co.*, 51 A.3d 442 (Del. 2012). (Doc. 49, pp. 14–15). *Intel* involved a different scenario. There, the second layer excess insurer's coverage triggered after liability reached the first layer excess insurer's limit of $50 million. *Intel*, 51 A.3d at 445. The first layer excess insurer paid $27.5 million toward this amount, and Intel applied its out-of-pocket defense costs to the total to reach the $50 million threshold. *Intel*, 51 A.3d at 445. The Supreme Court of Delaware held that Intel could not apply its defense costs to the $50 million total under the policy. *Intel*, 51 A.3d at 452. Protective has tendered its $900,000 limits under its policy, making *Intel* distinguishable.

(11th Cir. 2006) (citing *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 409–11 (11th Cir. 1999). Federal courts may hear only "Cases" and "Controversies." U.S. CONST. art. III, § 2. This limitation applies to declaratory judgment actions:

> Echoing the "case or controversy" requirement of Article III, the Declaratory Judgment Act "provides that a declaratory judgment may only be issued in the case of an actual controversy." "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." The controversy between the parties cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a "substantial likelihood that he will suffer injury in the future." "Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, . . . [the plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future."

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019) (alterations and emphasis in *A&M*) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985); *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (other citations omitted)). To have standing to pursue a claim against a defendant, a plaintiff must establish that a controversy exists as to each claim against the defendant. *Cf. Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (noting plaintiffs must demonstrate standing for each claim against each defendant).

Relying on a declaration from its Executive Vice President for Claims, Protective argues that because it has tendered $900,000 to the plaintiffs and because the $900,000 satisfies its policy limit, there is not a controversy between it and the plaintiffs. (Doc. 22, pp. 8–10; Doc. 22-1, pp. 1, 2, ¶¶ 1, 6). The plaintiffs do not disagree, but Endurance contends that "the 'Underlying Limits of Insurance' have not been exhausted." (Doc. 44, p. 18, ¶ 12). Because the plaintiffs and Protective acknowledge that Protective has paid its policy limits to the plaintiffs, there is not a controversy between the plaintiffs and Protective; Endurance's disagreement does not create a controversy between the plaintiffs and Protective for the purposes of standing. *See A&M*, 925 F.3d at 1210.

To assist them in responding to Endurance's defense relating to the terms in the Protective policy, the plaintiffs ask the Court to realign Protective as a plaintiff. District courts must "realign the parties in an action to reflect their interests in the litigation." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313–14 (11th Cir. 2012). The plaintiffs argue that Rule 19 requires Protective's participation as a party. (Doc. 27, pp. 4–11). Under Rule 19(a):

> (1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect that interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).[12]

As discussed in this opinion, Endurance may not contest Protective's decision to pay its coverage limit. The remaining dispute in this action requires the Court to determine whether Endurance must tender payment to the plaintiffs under the terms of the Endurance policy. Protective's presence is not necessary for the Court to accord complete relief among the parties. *See* FED. R. CIV. P. 19(a)(1)(A). Because Protective has tendered its limits, interpreting Protective's policy as it concerns Endurance's obligations will not impair or impede Protective's ability to protect its interests. *See* FED. R. CIV. P. 19(a)(1)(B)(i). And because Endurance cannot challenge Protective's payment decision, absent a showing of fraud or bad faith, the plaintiffs do not run the risk of incurring inconsistent obligations. *See* FED. R. CIV.

---

[12] The Court has not found an Eleventh Circuit decision addressing Rule 19(a)'s application in the context presented here. The parties have cited decisions involving similar scenarios that come down on both sides of the issue. *See, e.g.*, *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, 877 F. Supp. 1170, 1174 (N.D. Ill. 1995); *Am. Int'l Ins. Co. v. Schuler*, No. 2:08-CV-976-VEH, 2008 WL 11375402, at *4 (N.D. Ala. Sept. 3, 2008); *Hudson Excess Ins. Co. v. Pino*, No. 23-cv-21262-BLOOM/Torres, 2023 WL 8878222, at *5 (S.D. Fla. Dec. 20, 2023); *Koppers Co. v. The Aetna Cas. & Sur. Co.*, 158 F.3d 170, 176 (3d Cir. 1998).

P. 19(a)(1)(B)(ii). Therefore, this action no longer requires Protective's presence as a party.

Because there is no dispute between the plaintiffs and Protective and because Protective is not a necessary party to this litigation, the Court grants Protective's motion to dismiss it from this action.

V.

Accordingly, the Court grants the plaintiffs' motion for judgment on the pleadings against Endurance on the plaintiffs' request for a declaratory judgment that Protective exhausted its payment obligations. The Court dismisses the plaintiffs' claims against Protective for lack of subject matter jurisdiction. The plaintiffs' requests to realign Protective as a plaintiff and to stay the deadlines in this matter are moot.

The Clerk of Court shall please strike Endurance's amended answer, Doc. 48.

The Clerk shall please TERM Doc. 27 and Doc. 46. The Clerk shall please TERM Doc. 22 and Doc. 66 as moot.

**DONE** and **ORDERED** this July 28, 2025.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE